**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BOB BASSETT, DEVONSHAY SILAS, and CHARLES CATHEY, | ) | |
| | ) | No. 08 C 2640 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER MARIN # 19521, OFFICER RONAN # 2040, OFFICER RIVERA #517044 OFFICER ACEVEZ # 18154, OFFICER COLINDRES # 19764, OFFICER SZEZOL #6183 OFFICER CANTO # 6720, OFFICER ZULLO #6727, OFFICER NICPAN # 7668, OFFICER ZAHN #827, UNKNOWN OFFICERS, and the CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) | Judge Gottschall<br><br>Magistrate Judge Denlow |
| Defendants. | ) | |

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**
**OR IN THE ALTERNATIVE 12(e) MOTION FOR A MORE DEFINITE STATEMENT**

The Individual Defendants Police Officers Marin, Sean Ronan, Rivera, Acevez, Colindres, Szeszol, Canto, Zullo, Nicpan and Zahn (hereinafter "Individual Defendants or Defendant Officers"), by and through their attorney, Suyon Reed, Assistant Corporation Counsel of the City of Chicago, respectfully move this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I-IX of plaintiffs' complaint for failure to state a claim upon which relief can be granted, or in the alternative for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).  In support of their motion, Defendant Officers submit the following memorandum.[1]

---

[1]     Defendant City of Chicago has already filed its' answer to plaintiffs' complaint and this Motion only addresses the Individual Defendants and Counts I-IX.

## INTRODUCTION

Plaintiffs seek remedies pursuant to the Civil Rights Act as codified under 42 U.S.C. § 1983. The lawsuit stems from an alleged violation of Plaintiffs' Fourth Amendment right to be free from unreasonable seizures. See, Pl. Complt., p. 2, ¶¶ 1, 5, herein after "complaint". Plaintiffs' complaint contains seventy numbered paragraphs and alleges eleven counts: Count I "§ 1983 Excessive force"; Count II "§ 1983 False arrest"; Count III "False arrest- state claim"; Count IV "Battery- state claim"; Count V "Malicious prosecution- state claim", and Count VI "§ 1983 Deliberate Indifference to Medical Needs"; Count VII "§ 1983 Conspiracy Claim"; Count VIII "Conspiracy Claim- State Law"; Count IX "§ 1983 Equal Protection - Class of One"; Count X "Monell"; Count XI "745 ILCS 10/9-102 Claim Against the City of Chicago"; Count XII "Supplementary Claim for *Respondeat Superior*". Counts I, II, III, IV, V, VI, VII, VIII and IX are directed to the Individual Defendants. Counts X, XI and XII are directed to the City of Chicago. Nowhere in Plaintiffs' Complaint do they specify any specific conduct engaged by any particular named defendant. Instead, Plaintiffs simply allege everything against "DEFENDANT OFFICERS". Plaintiffs' complaint, is vague and deficient as to even the most fundamental allegations in Counts I-VI, that Defendant Officers cannot reasonably be required to frame a responsive pleading without a more definite statement on the part of the plaintiffs. See, Crawford-El v. Britton, 523 U.S. 574, 598 (1998). In Counts VII, VIII and IX, plaintiffs fail to state a cause of action upon which relief can be granted. In addition, Counts II, III, VII, VIII and IX are redundant and therefore must be dismissed.

## LEGAL STANDARD

2

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider all well-pleaded allegations in the complaint as true and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2003). With a few exceptions, the Federal Rules of Civil Procedure generally do not require a plaintiff to plead specific facts or elements of a claim. Id. Rather, they require only a short and plain statement which notifies the defendant of plaintiff's claims. Id. Thus, the Court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)). For a complaint to adequately state a claim that entitles the plaintiff to relief, it must meet two requirements. EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must "describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Id. (quoting Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955, 1964(2007)). Second, the complaint's allegations must "plausibly suggest that the plaintiff has a right to relief." Id. To meet the plausibility standard, a complaint must include enough factual allegations to "raise the right to relief above a speculative level." Twombley, 127 S.Ct. at 1965. Unsupported conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 1964-65; see also Hickey v. O'Bannon, 287 F.3d 656, 658 (7th Cir. 2002)(court not "obliged to accept as true legal conclusions or unsupported conclusions of fact.").

**ARGUMENT**

3

According to the Plaintiffs, "on or about February 21, 2008, some or all of the DEFENDANT OFFICERS were engaged in an unreasonable seizure of the PLAINTIFFS. This conduct violated the Fourth Amendment to the United States Constitution." Complaint, p. 2, ¶ 5. Plaintiffs further allege, "[a]t all times material to this complaint, the DEFENDANT OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, customs and usages of the CITY OF CHICAGO." Id. at ¶ 4. Under Plaintiffs' "Facts" section, Plaintiffs allege, in relevant part, the following:

·   The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICERS caused an unreasonable seizure to the Plaintiffs. Id. at, ¶ 7;

·   The DEFENDANT OFFICERS charged and/or participated in the charging of PLAINTIFFS with criminal activity, and arrested, participated in the arrest and/or failed to observe and/or learn that PLAINTIFF had committed criminal activity of any sort. The DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFFS. Id., ¶ 8;

·   Some or all of the DEFENDANT OFFICERS conspired to cause damage to PLAINTIFFS in the following manner: (a) agreeing to falsely arrest and/or falsely institute criminal charges/ proceedings against the PLAINTIFFS; (b) using excessive force and/or failing to intervene in the use of excessive force against the PLAINTIFFS; (c) agreeing not to report each other after witnessing and/or using excessive force relative to the PLAINTIFFS; (d) agreeing not to report each other after falsely arresting and/or charging PLAINTIFFS; and (e) generating false documentation to cover-up their own and each other's misconduct. Id., ¶ 23;

·   On February 21, 2008, the DEFENDANT OFFICERS were on duty at all times relevant to this complaint and were duly appointed police officers for the CITY OF CHICAGO. THE DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. Id., ¶ 11.

Here, plaintiffs are silent as to the location of their arrest, the time of the encounter with the police, an explanation of what happened, nor do plaintiffs offer any details regarding any other allegedly unlawful "acts or omissions" of the "Defendant Officers." Plaintiffs also do not

4

identify the "Defendant Officers" who allegedly engaged in these acts or omissions. In fact, plaintiffs even go so far as to say "some or all of the Defendant Officers..." conspired to cause damage to the plaintiffs...Id. At most, the only fact that plaintiffs allege is the date of February 21, 2008 when these alleged constitutional violations occurred by "some or all of the Defendant Officers." This is simply insufficient since it forces the ten named Defendant Officers to "guess" and or "speculate" where the incident occurred and which one of the them or one of the "unknown officers" violated either one or all three of the plaintiffs' constitutional rights. Rule 8(a)(2) requires that a complaint contain a minimal level of factual detail so that the defendant has fair notice as to the claims against him and is given a "reasonable opportunity" to form answer. Pratt v. Tarr, 464 F.3d 730, 732 (7th Cir. 2006). A defendant must receive sufficient detail to "begin to prepare [its] defense." Id. at 733. In addition, a complaint "should contain information that one can provide and that is clearly important." Concentra Health, 496 F.3d at 780. In this case, the plaintiffs are fully aware of the location of where they encountered the defendant officers, the time the violation occurred and which Defendant Officer violated either one or all of the plaintiffs' rights. As it stands, the Defendant Officers are unable to fully answer the complaint without more information from the plaintiffs.

## EQUAL PROTECTION CLASS-OF-ONE

In their complaint, Plaintiffs allege "[t]he actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-up, which led to the generation of false documentation and criminal charges to be lodged against PLAINTIFFS, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly against the Plaintiffs, therefore violating the Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution." <u>Id.</u>, ¶ 25.  Plaintiffs further allege, "[w]ith regard to an Equal Protection

Claim, PLAINTIFFS were a 'Class of One.'  In that regard, PLAINTIFFS were treated with ill

will and/or discriminated against with no rational basis. Plaintiffs were intentionally treated

differently as a result of having a potential claim and  witnessing police misconduct attributable

to the DEFENDANT OFFICERS.  The DEFENDANT OFFICERS acted with discriminatory

intent by treating PLAINTIFFS differently and trying to cause further injury to PLAINTIFFS by

generating false evidence against PLAINTIFFS.  Further, PLAINTIFFS were similarly situated to

other individuals involved in incidents with police officers that were not the victims of police

misconduct and/or potential claimants against Police Officers." <u>Id.</u>, ¶ 26.

The class-of-one theory of equal protection liability principally derives from the Supreme

Court's *per curiam* decision in <u>Village of Willowbrook v. Olech</u> 528 U.S. 562 (2000).  The case

arose out of a dispute between a property owner, who was not a member of any suspect class or

group, and the village over the requirements for an easement.  <u>Olech</u>, 528 U.S. at 563.  The

Supreme Court held that an equal protection "class of one" claim may proceed without

membership of a class or group where the "plaintiff alleges that she has been intentionally treated

differently from others similarly situated and <u>that there is no rational basis for the difference in</u>

<u>treatment</u>." <u>Olech</u>, 528 U.S. at 564.

The Seventh Circuit established that where a rational or legitimate reason may be

<u>hypothesized</u>, an equal protection "class of one" claim fails as a matter of law.  <u>Lauth v.</u>

<u>McCollum</u>, 424 F.3d 634 (7th Cir. 2005) (J. Posner); <u>see</u> also <u>Bell v. Duperrault</u>, 367 F.3d 703,

709-11 (7th Cir. 2004) (J. Posner concurring) (noting the lack of clarity following the <u>Olech</u>

decision and the varying lines of authority set forth by the several circuits) (holding that a class-

6

of-one plaintiff must surpass rational scrutiny and negative any reasonably conceivable state of facts that could provide a rational basis for the government action). The complained of action "only fails rational basis scrutiny if no sound reason for the action can be hypothesized." McCollum, 424 F.3d at 634. (citations omitted). In stating such, the Seventh Circuit sanctioned the disposal of class-of-one claims in Rule 12(b)(6) motions "[s]ince hypothesis is not proof, this test that we have articulated can often be applied in advance of discovery. Id. (citations omitted).

In addition, in Engquist v. Oregon Dep't of Agriculture, 128 S.Ct. 2146 (U.S. 2008), the Supreme Court reasoned that Olech was more an application of the Equal Protection Clause's guarantee of freedom from arbitrary government classification than an exception to the requirement for suspect classification. See, Engquist, 128 S.Ct. at 2153. The Supreme Court held that the core concerns of the Equal Protection Clause are not implicated in disputes inherently circumscribed by the discretionary exercise of the state's authority to fire an employee. Id. at 2153-57 (holding the class-of-one theory does not apply in the public employment context). The reasoning in Engquist fully applies to eliminate the application of the class-of-one theory to a warrantless arrest.[2]

Here, plaintiffs' class-of-one claim haphazardly recites equal protection language and is nothing but a challenge to the legitimacy of their arrests for a criminal violation. In the absence of an alleged suspect classification, the core concern of the Equal Protection Clause to "shield against arbitrary classifications" is not implicated in the warrantless arrest context.[3] The exercise

---

[2] A copy of the decision is attached hereto as Exhibit A.

[3] This is the arena of the Fourth Amendment. Moreover, nothing prevents Plaintiffs from alleging they are a member of a suspect class or pursuing a claim under 42 U.S.C. § 1985. Of course, like any allegation, it would necessarily require a good faith basis to set forth such a claim. See Fed. R. Civ. P. 11. To be certain, Plaintiffs are impermissibly attempting to "shoehorn … [their false arrest and excessive force claims] into a Section 1983 equal protection action by defining a class based on [their] status as a victim of alleged [unconstitutional] conduct". See, McDorman v. Smith, 437 F. Supp.2d 768, 775-76 (N.D. Ill. 2006) (J.

of state authority to make an arrest is an inherently discretionary act necessarily contingent upon a "vast array" of subjective circumstances and highly contextual determinations by police officers. See e.g. Engquist, 128 S.Ct. at 2153-54; see also Sheik-Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir. 1994) (addressing probable cause to arrest and noting "[i]n recognition of the *endless scenarios confronting police officers in their daily regimen*, courts evaluate probable cause 'not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard.'") (emphasis added) (citations omitted).  Given the subjective, contextual decision-making inherent in every arrest, there are no set of circumstances sufficiently similar to enable any meaningful equal protection analysis. See, Engquist, 128 S.Ct. at 2154 ("allowing a challenge based on arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise"). As the Supreme Court has stated "[i]t is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." Id.  Thus, in light of Engquist, this equal protection claim must fail.

Further, Plaintiffs' challenge to the alleged difference in treatment lacks any "clear standard" at all to which the state action may be compared.  Plaintiffs' equal protection claim is entirely predicated upon the factual circumstances relating to their seizure.  Moreover, Plaintiffs' entire Complaint alleges the "DEFENDANT OFFICERS" acted at all times under color of law and in the scope and course of their employment as police officers.  As such, whatever the treatment afforded to Plaintiffs in comparison to the treatment afforded to others may at the very

---

Gettleman) (dismissing similar equal protection claim).  Like in McDorman, Plaintiffs fail to establish the necessary requirements for a valid equal protection claim.

least be "hypothesized" to be rationally related to the legitimate state interest in enforcing criminal laws. See, McCollum, 424 F.3d at 634 (a class-of-one claim fails unless it can "negative any reasonably conceivable state of facts that could provide a rational basis for the classification.") (citations and internal quotations omitted). For all of the above reasons, plaintiffs' equal protection claim fails as a matter of law and should be dismissed.

**I.    Plaintiff Should Be Required To Submit A More Definite Statement As To His Equal Protection Claim Under Rule 12(e)**

In the alternative, plaintiffs should be required to set forth a more definite statement as to the particulars of their equal protection class-of-one claim. The Complaint simply tracks the operative language associated with class-of-one claims and offers no meaningful insight as to nature or basis for the equal protection claim. Rule 12(e), in relevant part, provides: "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e).

As previously stated, plaintiffs' Complaint fails to specify any specific conduct engaged by any particular named defendant officer. Instead, plaintiffs simply allege everything against "DEFENDANT OFFICERS." See, supra, pp. 5, 6; see also Complaint ¶¶ 25, 26.

Rule 12(e) provides relief in these circumstances and Plaintiffs should be required to submit a more definite statement as to the equal protection claim they are bringing in this case to allow the Defendant Officers to adequately respond and assert appropriate defenses. Rule 12(e) was intended as a means of relief where there is vagueness and ambiguity in the sense of indefiniteness of facts as well as in instances where there is vagueness and ambiguity in the sense

of lacking clarity of expression. <u>Parus v. Cator</u>, 2005 WL 1458773 *3 (W.D. Wis. 2005).

Plaintiffs have failed to provide essential facts that allow the Defendant Officers to properly

investigate their claims, respond to plaintiffs' complaint and assert the appropriate defenses.

Finally, plaintiffs' challenge to the alleged difference in treatment lacks any "clear

standard" at all to which the state action may be compared. Instead, it simply references "other

individuals involved in incidents with police officers that were not the victims of police

misconduct and/or potential claimants against Police Officers". <u>See</u>, Complaint, ¶ 26. It appears

that in order to decide Plaintiffs' class-of-one claim, the Court would be required to determine

who is similarly situated to the Plaintiffs. In theory, this is every single person ever seized or

arrested by any Chicago Police Officer in the history of the City of Chicago. Thus, the Court (or

likely the jury) would certainly have to parse through every arrest to find the "proverbial needle

in the haystack". Additionally, the Court would have to determine if any purported similarly

situated persons also were the victim of "police misconduct" or had a "potential" claim but did

not receive similar treatment (mistreatment) as Plaintiffs. Thus, the Court would have to parse

through the interaction not only between each Defendant Officer and the Plaintiffs (in other

words every action by each Individual Defendant in relation to the seizure) but every single

individual ever arrested by any Chicago Police Officer. Then, the Court would have to decide

whether or not there are sufficiently similar circumstances to those related to this case. Then, the

Court must compare the action of each Individual Defendant toward the Plaintiffs to the similar

interaction between the Individual Defendant and the similarly situated person(s) to determine

whether or not there are differences in the treatment. Finally, the Court must determine whether

those differences in treatment were arbitrary and wholly lacking in any legitimate governmental

interest.  This is not the business of the Equal Protection Clause.  Therefore, as a matter of law,

plaintiffs' equal protection claim- class of one, fails.

**CONSPIRACY CLAIMS**

**I.    Plaintiffs' Conspiracy Claims Against Defendant Officers Must be Dismissed Because it Fails to Establish a Prima Facie Case of Civil Conspiracy and is Barred by the Intra-corporate Conspiracy Doctrine.**

Plaintiffs' conspiracy claims against Defendant Officers in Counts VII and VIII must be

dismissed for failure to state a cause of action.  To establish a prima facie case of civil

conspiracy, a plaintiff must show not only "an express or implied agreement among defendants

to deprive a plaintiff of his or her constitutional rights," but also the "actual deprivations of those

rights in the form of overt acts in furtherance of the agreement."  Scherer v. Balkema, 840 F.2d

437, 442 (7th Cir. 1988).  Moreover, several courts in this district have recognized that a § 1983

conspiracy count cannot stand  where the complaint "neither alleges any injury over and above

the underlying torts at issue nor casts the net of liability over any additional defendants not

otherwise reached," such that the plaintiff had been "prevented from pursuing a tort action or that

the value of any such action has been reduced by the cover up."  Hawkins v. Mathus, 1999 WL

966128, *3 (N.D.Ill. 1999) (Pallmeyer, J.); Mendez v. Henniger  1999 WL 202907, *4 (N.D.Ill.

1999)(Gottschall, J.); see also Ingram v. Jones, 1996 WL 355365, *2 (N.D.Ill.1996)(Nordberg,

J.)(concealment of constitutional violations such as excessive force does not amount to separate

constitutional violation of conspiracy unless victim alleges deprivation of access to the courts).

In plaintiffs' complaint, they state that "the DEFENDANT OFFICERS specifically

engaged in communication on or about February 21, 2008, whereby the DEFENDANT

OFFICERS agreed to facilitate, engage in an support the activity which occurred in connection

with the allegations listed above. Those allegations being that the DEFENDANT OFFICERS agreed to falsely arrest and/or falsely institute criminal charges/proceedings against the PLAINTIFFS; used excessive force and/or failed to intervene in the use of excessive force against the PLAINTIFFS; agreed not to report each other after witnessing and/or using excessive force relative to the PLAINTIFFS; agreed not to report each other after falsely arresting and/or charging PLAINTIFFS; and generated false documentation to cover-up for their own and each other's misconduct. Complaint, ¶¶ 23, 24.  This is simply not enough. In Flores v. City of Chicago, 682 F.Supp. 950, 953 (N.D.Ill. 1988)(Norgle, J.). Judge Norgle held that "a conspiratorial agreement cannot be inferred from the averment that overt acts were committed in furtherance of the conspiracy." See also, Sweeney v. Bausman, 1987 WL 45713, *4 (N.D.Ill. 1987). The court in Flores noted that "Plaintiffs here present no facts from which a conspiratorial agreement may reasonably be inferred. Plaintiffs allegations in their complaint amount to nothing more than an assertion that the overt acts were carried out in furtherance of the alleged conspiratorial agreement, with no facts to substantiate that an actual agreement existed." 682 F.Supp. 950, 953 (N.D.Ill. 1988)(Norgle, J.). Therefore, since plaintiffs have not presented any facts to substantiate that an actual agreement existed and the overt acts were carried out in furtherance of the alleged conspiratorial agreement, then their claims of a "Conspiracy" must fail.

Here, the underlying constitutional violations are enumerated in Count I "§ 1983 Excessive force"; Count II "§ 1983 False arrest"; Count III "False arrest- state claim"; Count IV "Battery- state claim"; Count V "Malicious prosecution- state claim", and Count VI "§ 1983 Deliberate Indifference to Medical Needs", thus since the plaintiffs' claim that the conspiracy occurred when the defendants falsely arrested them, used excessive force and generated false

evidence against them are all enumerated in their other claims and not in any independent claim

that is separate and apart from the constitutional violations listed in Counts I-VI, and where the

complaint "neither alleges any injury over and above the underlying torts at issue and that the

plaintiffs have been "prevented from pursuing a tort action or that the value of any such action

has been reduced by the cover up", then their "Conspiracy" claims must be dismissed.

Further, the plaintiffs' conspiracy claims are barred by the intra-corporate conspiracy

doctrine, which states that "a conspiracy cannot exist solely between members of the same

entity." Payton v. Rush-Presbyterean-St. Luke's Med. Ctr., 184 F.3d 623, 632 (7th Cir.1999).

The Seventh Circuit has held that "managers of a corporation jointly pursuing its lawful business

do not become 'conspirators' when acts within the scope of their employment are said to be

discriminatory or retaliatory." Travis v. Gary Community Mental Health Center, Inc., 921 F.2d

108, 110 (7th Cir.1990). This doctrine applies also to officials working within a government

agency. Wright v. Ill. Dep't of Children and Family Services, 40 F.3d 1492, 1508 (7th Cir.1994).

Here, the Defendant Officers are members on the same entity, the Chicago Police

Department, and the only connection among the Defendant Officers, as stated in plaintiff's

complaint, is the fact they were employed by the Chicago Police Department and acting within

the scope of their employment at the time of the incident. Complaint, ¶ 11. However, as the court

held in Travis, just because the Defendants Officers are all members of the same police

department does not make them conspirators even if plaintiffs believe the arrests were retaliatory.

Therefore, since plaintiffs have failed to state a cause of action for "Conspiracy" in their

complaint, then those claims must be dismissed.

**II.      Counts II, III, VII, VIII and IX  Must be Dismissed as a Redundant Claims**

The first inquiry in any § 1983 suit is "to isolate the precise constitutional violation with which the defendant is charged." Graham v. Connor, 490 U.S. 386, 394 (1989). See also Conyers v. Abitz, 416 F.3d 580, 586 (7th Cir. 2005). The Seventh Circuit has dealt with the issue of redundant claims with different constitutional labels. Conyers, 416 F.3d at 586. The Seventh Circuit found that plaintiffs could not expand their claims by attaching additional constitutional labels to them. Id. "When a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims."Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

Here, the same acts which plaintiffs allege are violations of the Fourth Amendment under their claims for false arrest, excessive force and conspiracy, are the same acts which plaintiffs allege are an equal protection violation. The equal protection claim in Count IX should be dismissed because the Fourth Amendment, provides the explicit source of constitutional protection and case law dealing with plaintiffs claims. Since plaintiffs in this matter have pled a false arrest claim, excessive force claim and conspiracy claim, Count IX's equal protection claim is redundant.

In addition, the same acts which plaintiffs allege are violations of the Fourth Amendment under their claims in Section 1983 False Arrest in Count II, False Arrest- state claim in Count III, Section 1983 Conspiracy in Count VII and Conspiracy- state claim in Count VIII, derive from the same acts which plaintiffs allege violated their constitutional rights and thus are redundant. See supra § I, pp. 11-13. Even if the Court allows plaintiffs "Conspiracy" claims to survive, the plaintiffs need only plead either the Section 1983 Conspiracy claim or the state law Conspiracy

14

claim, not both pursuant to <u>Conyers</u>. In addition, the Section 1983 False Arrest claim is identical

in facts to the state False Arrest claim, thus, either the Section 1983 or the state claim for False

Arrest must be dismissed because it is also redundant pursuant to <u>Conyers</u>. Therefore, under

<u>Conners</u>, <u>Conyers</u> and <u>Oliver</u>, Counts VII, VIII and IX in plaintiffs' complaint are redundant

because they are not separate and distinct from claims in Counts I-IV as argued <u>supra</u> and

therefore must be dismissed. Counts II and III are exactly the same and one of those counts must

also be dismissed as redundant.

<b><u>CONCLUSION</u></b>

For all of the reasons stated <u>supra</u>, plaintiffs' claims in Counts I-IX against Defendant

Officers must be dismissed or in the alternative plaintiffs' should be ordered to provide a more

definite statement.

Wherefore, Defendants Officers respectfully request that this Court enter an order

dismissing Counts I-IX of Plaintiff's complaint with prejudice pursuant to Fed. R. Civ. P.

12(b)(6) or in the alternative grant Defendant Officers motion for a more definite statement of

plaintiffs' claims in Counts I-IX pursuant to Federal Rule of Civil Procedure 12(e).


Respectfully submitted,

By:     **/s/ Suyon Reed**
Assistant Corporation Counsel


30 North LaSalle Street - Suite 1400
Chicago, Illinois  60602
(312) 744-3283
Attorney No. 06280973

15

# EXHIBIT A

128 S.Ct. 2146                                                                Page 1
128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

▷

Engquist v. Oregon Dept. of Agriculture
U.S.,2008.

Supreme Court of the United States
Anup ENGQUIST, Petitioner,
v.
OREGON DEPARTMENT OF AGRICULTURE et al.
No. 07-474.

Argued April 21, 2008.
Decided June 9, 2008.

**Background:** Former state employee, who had been effectively laid off during reorganization of employing agency, sued agency and individual employees, asserting various federal civil rights claims including "class of one" equal protection claim, which alleged that she had been fired for arbitrary, vindictive and malicious reasons. The United States District Court for the District of Oregon, Donald C. Ashmanskas, United States Magistrate Judge, entered judgment on jury verdict for employee on class-of-one claim. The United States Court of Appeals for the Ninth Circuit, 478 F.3d 985, reversed. Certiorari was granted.

**Holding:** The United States Supreme Court, Chief Justice Roberts, held that class-of-one equal protection claim is not cognizable in context of public employment.

Affirmed.

Justice Stevens filed dissenting opinion joined by Justices Souter and Ginsburg.

West Headnotes

**[1] States 360 ⚖═53**

360 States
  360II Government and Officers

360k53 k. Appointment or Employment and Tenure of Agents and Employees in General. Most Cited Cases
Constitutional review of state government's dealings with citizen employees affords state greater leeway than constitutional review of state in its exercise of regulatory or licensing power.

**[2] States 360 ⚖═53**

360 States
  360II Government and Officers
    360k53 k. Appointment or Employment and Tenure of Agents and Employees in General. Most Cited Cases
On constitutional review of state government's dealings with citizen employees, court balances employees' constitutional rights against realities of employment context by considering whether asserted employee right implicates basic concerns of relevant constitutional provision, or whether claimed right can more readily give way to requirements of government as employer.

**[3] Constitutional Law 92 ⚖═3057**

92 Constitutional Law
  92XXVI Equal Protection
    92XXVI(A) In General
      92XXVI(A)6 Levels of Scrutiny
        92k3052 Rational Basis Standard; Reasonableness
        92k3057 k. Statutes and Other Written Regulations and Rules. Most Cited Cases
Under Equal Protection Clause, when those who appear similarly situated are nevertheless treated differently by state legislation or regulation, there must be rational reason for difference. U.S.C.A. Const.Amend. 14.

**[4] Constitutional Law 92 ⚖═3593**

92 Constitutional Law
  92XXVI Equal Protection
    92XXVI(E) Particular Issues and Applica-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
**(Cite as: 128 S.Ct. 2146)**

tions

92XXVI(E)7 Labor, Employment, and Public Officials

92k3592 Public Employees and Officials

92k3593 k. In General. Most Cited Cases

**Officers and Public Employees 283 €⇒66**

283 Officers and Public Employees

283I Appointment, Qualification, and Tenure

283I(G) Resignation, Suspension, or Removal

283k66 k. Grounds for Removal. Most Cited Cases

"Class of one" equal protection claim, under which plaintiff alleges that she has been treated differently from other similarly situated persons without any rational basis, but does not allege that differential treatment was due to plaintiff's membership in particular class, is not cognizable in public employment context; employment decisions are often subjective and individualized, and government employment, absent legislation, is at-will. U.S.C.A. Const.Amend. 14.

***2146 Syllabus** FN*

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Petitioner Engquist, an Oregon public employee, filed suit against respondents-her agency, her supervisor, and a co-worker-asserting, *inter alia,* claims under the Equal Protection Clause: She alleged she had been discriminated against based on her race, sex, and national origin, and she also brought a so-called "class-of-one" *2147 claim, alleging that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for arbit-

rary, vindictive, and malicious reasons. The jury rejected the class-membership equal protection claims, but found for Engquist on her class-of-one claim. The Ninth Circuit reversed in relevant part. Although recognizing that this Court had upheld a class-of-one equal protection challenge to state legislative and regulatory action in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060, the court below emphasized that this Court has routinely afforded government greater leeway when it acts as employer rather than regulator. The Court concluded that extending the class-of-one theory to the public-employment context would lead to undue judicial interference in state employment practices and invalidate public at-will employment.

*Held:* The class-of-one theory of equal protection does not apply in the public employment context. Pp. 2150 - 2157.

(a) There is a crucial difference between the government exercising "the power to regulate or license, as lawmaker," and acting "as proprietor, to manage [its] internal operation." *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230. Thus, in the public-employment context, the Court has recognized that government has significantly greater leeway in its dealings with citizen employees than in bringing its sovereign power to bear on citizens at large. See, *e.g.,O'Connor v. Ortega,* 480 U.S. 709, 721-722, 107 S.Ct. 1492, 94 L.Ed.2d 714. The relevant precedent establishes two main principles: First, government employees do not lose their constitutional rights when they go to work, but those rights must be balanced against the realities of the employment context. See, *e.g.,id.,* at 721, 107 S.Ct. 1492. Second, in striking the appropriate balance, the Court considers whether the claimed employee right implicates the relevant constitutional provision's basic concerns, or whether the right can more readily give way to the requirements of the government as employer. See, *e.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708. Pp. 2150

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
**(Cite as: 128 S.Ct. 2146)**

- 2153.

(b) The Court's equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101. *Olech* did recognize that a class-of-one equal protection claim can in some circumstances be sustained. Its recognition of that theory, however, was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle to the facts in that case: The government singled Olech out with regard to its regulation of property, and the cases upon which the Court relied concerned property assessment and taxation schemes that were applied in a singular way to particular citizens. What seems to have been significant in *Olech* and the cited cases was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. This differential treatment raised a concern of arbitrary classification, and therefore required that the State provide a rational basis for it. There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases treating like individuals differently is an accepted consequence of the discretion granted to governmental officials. This principle applies most clearly in the employment context, where decisions*2148 are often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. Unlike the context of arm's-length regulation, such as in *Olech,* treating seemingly similarly situated individuals differently in the employment context is par for the course. It is no proper challenge to what in its nature is a subjective and individualized decision that it was subjective and individualized. That the Court has never found the Equal Protection Clause implicated in this area is not surprising, given the historical understanding of the at-will nature of government employment. See, *e.g.,Cafeteria &* *Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230. Recognition of a claim that the State treated an employee differently from others for a bad reason, or for no reason at all, is simply contrary to the at-will concept. The Constitution does not require repudiating that familiar doctrine. Finally, the Court is guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick, supra,* at 143, 103 S.Ct. 1684. If class-of-one claims were recognized in the employment context, any personnel action in which a wronged employee can conjure up a claim of differential treatment would suddenly become the basis for a federal constitutional claim. The Equal Protection Clause does not require "[t]his displacement of managerial discretion by judicial supervision." *Garcetti v. Ceballos,* 547 U.S. 410, 423, 126 S.Ct. 1951, 164 L.Ed.2d 689. Pp. 2152 - 2157.

478 F.3d 985, affirmed.

ROBERTS, C.J., delivered the opinion of the Court, in which SCALIA, KENNEDY, THOMAS, BREYER, and ALITO, JJ., joined. STEVENS, J., filed a dissenting opinion, in which SOUTER and GINSBURG, JJ., joined.

Neal Katyal, Washington, D.C., for petitioner.
Janet A. Metcalf, Salem, OR, for respondents.
Lisa S. Blatt, Washington, D.C., for the United States as amicus curiae, by special leave of the Court, supporting the respondents.
Virginia A. Seitz, Jeffrey T. Green, Quin M. Sorenson, Pankaj Venugopal, Sidley Austin LLP, Washington, D.C., Craig A. Crispin, Crispin Employment Lawyers, Portland, OR, Neal Katyal, Counsel of Record, Justin Florence, Matthew Gerke, Stephen I. Vladeck, Washington, D.C., David H. Remes, Jeffrey C. Wu, Covington & Burling LLP, Washington, D.C., Sarah O'Rourke Schrup, Chicago, IL, for Petitioner.
Hardy Myers, Attorney General of Oregon, Peter Shepherd, Deputy Attorney General, Counsel of Record, Mary H. Williams, Solicitor General, Janet

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

A. Metcalf, Assistant Attorney General, Salem, Oregon, for Respondents.For U.S. Supreme Court briefs, see:2008 WL 467892 (Pet.Brief)2008 WL 795157 (Resp.Brief)2008 WL 1721900 (Reply.Brief)

Chief Justice ROBERTS delivered the opinion of the Court.

The question in this case is whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class. We hold that such a "class-of-one" theory of equal *2149 protection has no place in the public employment context.

I

Anup Engquist, the petitioner in this case, was hired in 1992 by Norma Corristan to be an international food standard specialist for the Export Service Center (ESC), a laboratory within the Oregon Department of Agriculture (ODA). During the course of her employment, Engquist experienced repeated problems with Joseph Hyatt, another ODA employee, complaining to Corristan that he had made false statements about her and otherwise made her life difficult. Corristan responded by directing Hyatt to attend diversity and anger management training.

In 2001, John Szczepanski, an assistant director of ODA, assumed responsibility over ESC, supervising Corristan, Hyatt, and Engquist. Szczepanski told a client that he could not "control" Engquist, and that Engquist and Corristan "would be gotten rid of." When Engquist and Hyatt both applied for a vacant managerial post within ESC, Szczepanski chose Hyatt despite Engquist's greater experience in the relevant field. Later that year, during a round of across-the-board budget cuts in Oregon, Szczepanski eliminated Corristan's position. Finally, on January 31, 2002, Engquist was informed that her position was being eliminated because of reorganiz-

ation. Engquist's collective-bargaining agreement gave her the opportunity either to "bump" to another position at her level, or to take a demotion. She was found unqualified for the only other position at her level and declined a demotion, and was therefore effectively laid off.

Engquist subsequently brought suit in the United States District Court for the District of Oregon against ODA, Szczepanski, and Hyatt, all respondents here, alleging violations of federal antidiscrimination statutes, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and state law. As to Engquist's equal protection claim, she alleged that the defendants discriminated against her on the basis of her race, sex, and national origin. She also brought what is known as a "class-of-one" equal protection claim, alleging that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for "arbitrary, vindictive, and malicious reasons." App. 10.

The District Court granted the respondents' motion for summary judgment as to some of Engquist's claims, but allowed others to go forward, including each of the equal protection claims. As relevant to this case, the District Court found Engquist's class-of-one equal protection claim legally viable, deciding that the class-of-one theory was fully applicable in the employment context. Civ. No. 02-1637-AS (D.Ore., Sept. 14, 2004), App. 58, 2004 WL 2066748, *5. The court held that Engquist could succeed on that theory if she could prove "that she was singled out as a result of animosity on the part of Hyatt and Szczepanski"-*i.e.,*"that their actions were spiteful efforts to punish her for reasons unrelated to any legitimate state objective"-and if she could demonstrate, on the basis of that animosity, that "she was treated differently than others who were similarly situated." *Ibid.*

The jury rejected Engquist's claims of discrimination for membership in a suspect class-her race, sex, and national origin claims-but found in her favor on the class-of-one claim. Specifically, the jury

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
**(Cite as: 128 S.Ct. 2146)**

found that Hyatt and Szczepanski "intentionally treat[ed] [Engquist] differently than others similarly situated with respect to the denial of her promotion, termination of her employment, or denial of bumping rights without any rational basis and solely *2150 for arbitrary, vindictive or malicious reasons." App. to Pet. for Cert. 3-4. The jury also found for Engquist on several of her other claims, and awarded her $175,000 in compensatory damages and $250,000 in punitive damages.

The Court of Appeals reversed in relevant part. It recognized that this Court had upheld a class-of-one equal protection challenge to state legislative and regulatory action in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (*per curiam*). 478 F.3d 985, 992-993 (C.A.9 2007). The court below also acknowledged that other Circuits had applied *Olech* in the public employment context, *id.,* at 993 (citing cases), but it disagreed with those courts on the ground that our cases have routinely afforded government greater leeway when it acts as employer rather than regulator, *id.,* at 993-996. The court concluded that extending the class-of-one theory of equal protection to the public employment context would lead to undue judicial interference in state employment practices and "completely invalidate the practice of public at-will employment." *Id.,* at 995. The court accordingly held that the class-of-one theory is "inapplicable to decisions made by public employers with regard to their employees." *Id.,* at 996.

Judge Reinhardt dissented, "agree[ing] with the other circuits that the class-of-one theory of equal protection is applicable to public employment decisions." *Id.,* at 1010. We granted certiorari to resolve this disagreement in the lower courts, 552 U.S. ----, 128 S.Ct. 977, 169 L.Ed.2d 800 (2008), and now affirm.

II

Engquist argues that the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class. She reasons that in *Olech,supra,* we recognized in the regulatory context a similar class-of-one theory of equal protection, Brief for Petitioner 14-15; that the Equal Protection Clause protects individuals, not classes, *id.,* at 15-17; that the Clause proscribes "discrimination arising not only from a legislative act but also from the conduct of an administrative official,"*id.,* at 17; and that the Constitution applies to the State not only when it acts as regulator, but also when it acts as employer, *id.,* at 23-29. Thus, Engquist concludes that class-of-one claims can be brought against public employers just as against any other state actors, *id.,* at 29-32, and that differential treatment of government employees-even when not based on membership in a class or group-violates the Equal Protection Clause unless supported by a rational basis, *id.,* at 32, 39-45.

We do not quarrel with the premises of Engquist's argument. It is well settled that the Equal Protection Clause "protect[s] persons, not groups," *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (emphasis omitted), and that the Clause's protections apply to administrative as well as legislative acts, see, *e.g., Raymond v. Chicago Union Traction Co.,* 207 U.S. 20, 35-36, 28 S.Ct. 7, 52 L.Ed. 78 (1907). It is equally well settled that States do not escape the strictures of the Equal Protection Clause in their role as employers. See, *e.g.,New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Harrah Independent School Dist. v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (*per curiam*); *2151Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (*per curiam*). We do not, however, agree that Engquist's conclusion follows from these premises. Our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
**(Cite as: 128 S.Ct. 2146)**

when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context.

### A

[1] We have long held the view that there is a crucial difference, with respect to constitutional analysis, between the government exercising "the power to regulate or license, as lawmaker," and the government acting "as proprietor, to manage [its] internal operation." *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). This distinction has been particularly clear in our review of state action in the context of public employment. Thus, "the government as employer indeed has far broader powers than does the government as sovereign." *Waters v. Churchill,* 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion). "[T]he extra power the government has in this area comes from the nature of the government's mission as employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible." *Id.,* at 674-675, 114 S.Ct. 1878. See also *Connick v. Myers,* 461 U.S. 138, 150-151, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (explaining that the government has a legitimate interest "in 'promot[ing] efficiency and integrity in the discharge of official duties, and [in] maintain[ing] proper discipline in the public service' " (quoting *Ex parte Curtis,* 106 U.S. 371, 373, 1 S.Ct. 381, 27 L.Ed. 232 (1882) (alterations in original))). "The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Waters, supra,* at 675, 114 S.Ct. 1878 (plurality opinion). Given the "common-sense realization that government offices could not function if every employment decision became a constitutional matter," *Connick, supra,* at 143, 103 S.Ct. 1684, "constitutional review of government employ-

ment decisions must rest on different principles than review of ... restraints imposed by the government as sovereign," *Waters, supra,* at 674, 114 S.Ct. 1878 (plurality opinion).

In light of these basic principles, we have often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large. Thus, for example, we have held that the Fourth Amendment does not require public employers to obtain warrants before conducting a search of an employee's office. *O'Connor v. Ortega,* 480 U.S. 709, 721-722, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (plurality opinion). See also *id.,* at 732, 107 S.Ct. 1492 (SCALIA, J., concurring in judgment). Although we recognized that the "legitimate privacy interests of public employees in the private objects they bring to the workplace may be substantial," we found that "[a]gainst these privacy interests ... must be balanced the realities of the workplace, which strongly suggest that a warrant requirement would be unworkable." *Id.,* at 721, 107 S.Ct. 1492 (plurality opinion). We have also found that the Due Process Clause does not protect a public employee from discharge, even when such discharge was mistaken or unreasonable. See *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("The Due **\*2152** Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions").

Our public-employee speech cases are particularly instructive. In *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), we explained that, in analyzing a claim that a public employee was deprived of First Amendment rights by her employer, we must seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

We analyzed the contours of this balance more fully in *Connick v. Myers, supra.* We explained that the First Amendment protects public-employee speech only when it falls within the core of First Amendment protection-speech on matters of public concern. We recognized that the " 'First Amendment does not protect speech and assembly only to the extent it can be characterized as political,' " and that the government therefore could not generally prohibit or punish, in its capacity as sovereign, speech on the ground that it does not touch upon matters of public concern, *id.,* at 147, 103 S.Ct. 1684 (quoting *Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 223, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). But "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices." *Connick,* 461 U.S., at 146, 103 S.Ct. 1684. As we explained, "absent the most unusual circumstances, a federal court is not the appropriate forum in wisdom to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.,* at 147, 103 S.Ct. 1684 (citing *Bishop, supra,* at 349-350, 96 S.Ct. 2074).

[2] Our precedent in the public-employee context therefore establishes two main principles: First, although government employees do not lose their constitutional rights when they accept their positions, those rights must be balanced against the realities of the employment context. Second, in striking the appropriate balance, we consider whether the asserted employee right implicates the basic concerns of the relevant constitutional provision, or whether the claimed right can more readily give way to the requirements of the government as employer. With these principles in mind, we come to the question whether a class-of-one theory of equal protection is cognizable in the public employment context.

B

Our equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). See, *e.g., Ross v. Moffitt,* 417 U.S. 600, 609, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (" 'Equal Protection' ... emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable"); *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 60, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes"). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an "identifiable group." *\*2153Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

Engquist correctly argues, however, that we recognized in *Olech* that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called "class of one." In *Olech,* a property owner had asked the village of Willowbrook to connect her property to the municipal water supply. Although the village had required only a 15-foot easement from other property owners seeking access to the water supply, the village conditioned Olech's connection on a grant of a 33-foot easement. Olech sued the village, claiming that the village's requirement of an easement 18 feet longer than the norm violated the Equal Protection Clause. Although Olech had not alleged that the village had discriminated against her based on membership in an identifiable class, we held that her complaint stated a valid claim under the Equal Protection Clause because it alleged that she had "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S., at 564, 120 S.Ct. 1073 (citing *Sioux City Bridge Co. v. Dakota*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

*County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923), and *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)).

[3] Recognition of the class-of-one theory of equal protection on the facts in *Olech* was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle. That case involved the government's regulation of property. Similarly, the cases upon which the Court in *Olech* relied concerned property assessment and taxation schemes. See *Allegheny Pittsburgh, supra; Sioux City Bridge, supra.* We expect such legislative or regulatory classifications to apply "without respect to persons," to borrow a phrase from the judicial oath. See 28 U.S.C. § 453. As we explained long ago, the Fourteenth Amendment "requires that all persons subjected to ... legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Hayes v. Missouri,* 120 U.S. 68, 71-72, 7 S.Ct. 350, 30 L.Ed. 578 (1887). When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment." *Olech,* 528 U.S., at 564, 120 S.Ct. 1073.

What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations-at least not with regard to easement length, however typical

such determinations may be as a general zoning matter. See *id.,* at 565, 120 S.Ct. 1073 (BREYER, J., concurring in result). Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, *2154 and we therefore required that the State provide a rational basis for it.

In *Allegheny Pittsburgh,* cited by the *Olech* Court, the applicable standard was market value, but the county departed from that standard in basing some assessments on quite dated purchase prices. Again, there was no suggestion that the "dramatic differences in valuation" for similar property parcels, 488 U.S., at 341, 109 S.Ct. 633, were based on subjective considerations of the sort on which appraisers often rely, see *id.,* at 338-342, 345, 109 S.Ct. 633. *Sioux City Bridge,* also cited in *Olech,* was the same sort of case, recognizing an equal protection claim when one taxpayer's property was assessed at 100 percent of its value, while all other property was assessed at 55 percent, without regard to articulated differences in the properties. See 260 U.S., at 445-447, 43 S.Ct. 190.

[4] There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146                                                        Page 9
128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922,
2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself-the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

This principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. As Engquist herself points out, "[u]nlike the zoning official, the public employer often must take into account the individual personalities and interpersonal relationships of employees in the workplace. The close relationship between the employer and employee, and the varied needs and interests involved in the employment context, mean that considerations such as concerns over personality conflicts that would be unreasonable as grounds for 'arm's-length' government decisions (e.g., zoning, licensing) may well justify different treatment of a public employee." Brief for Petitioner 48. Unlike the context of arm's-length regulation, *2155 such as in Olech, treating seemingly similarly situated individuals differently in the employment context is par for the course.

Thus, the class-of-one theory of equal protection-

which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review-is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

Of course, that is not to say that the Equal Protection Clause, like other constitutional provisions, does not apply to public employers. Indeed, our cases make clear that the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently. See, e.g.,Beazer, 440 U.S., at 593, 99 S.Ct. 1355 (upholding city's exclusion of methadone users from employment under rational-basis review); Martin, 440 U.S., at 199-201, 99 S.Ct. 1062 (classification between teachers who had complied with a continuing-education requirement and those who had not is rational and does not violate the Equal Protection Clause); Murgia, 427 U.S., at 314-317, 96 S.Ct. 2562 (upholding a mandatory retirement age-a classification based on age-under rational-basis review). The dissent's broad statement that we "excep[t] state employees from the Fourteenth Amendment's protection against unequal and irrational treatment at the hands of the State,"post, at 2158 (opinion of STEVENS, J.), is thus plainly not correct. But we have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner.

This is not surprising, given the historical understanding of the nature of government employment. We long ago recognized the "settled principle that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

government employment, in the absence of legislation, can be revoked at the will of the appointing officer." *McElroy,* 367 U.S., at 896, 81 S.Ct. 1743. The basic principle of at-will employment is that an employee may be terminated for a " 'good reason, bad reason, or no reason at all.' " Reply Brief for Petitioner 27. See *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 324, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) ("[T]he very concept of 'wrongful discharge' implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will"). Thus, "[w]e have never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information." *Waters,* 511 U.S., at 679, 114 S.Ct. 1878 (plurality opinion). See also *Connick,* 461 U.S., at 146-147, 103 S.Ct. 1684 ("[O]rdinary dismissals from government service ... are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable" (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and *Bishop,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684)). "And an at-will government employee ... generally**\*2156** has no claim based on the Constitution at all." *Waters,supra,* at 679, 114 S.Ct. 1878 (plurality opinion). See, *e.g.,Bishop, supra,* at 349-350, 96 S.Ct. 2074.

State employers cannot, of course, take personnel actions that would independently violate the Constitution. See *supra,* at 2150 - 2153. But recognition of a class-of-one theory of equal protection in the public employment context-that is, a claim that the State treated an employee differently from others for a bad reason, or for no reason at all-is simply contrary to the concept of at-will employment. The Constitution does not require repudiating that familiar doctrine.

To be sure, Congress and all the States have, for the most part, replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons. See, *e.g.,*5 U.S.C. § 2302(b)(10) (2006 ed.) (supervisor of covered federal employee may not "discriminate ... on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others"). See also Brief for United States as *Amicus Curiae* 20-21. But a government's decision to limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate.

Indeed, recognizing the sort of claim Engquist presses could jeopardize the delicate balance governments have struck between the rights of public employees and "the government's legitimate purpose in 'promot[ing] efficiency and integrity in the discharge of official duties, and [in] maintain[ing] proper discipline in the public service.' " *Connick, supra,* at 151, 103 S.Ct. 1684 (quoting *Ex parte Curtis,* 106 U.S., at 373, 1 S.Ct. 381; alterations in original). Thus, for example, although most federal employees are covered by the Civil Service Reform Act of 1978, Pub.L. 95-454, Congress has specifically excluded some groups of employees from its protection, see, *e.g.,*5 U.S.C. § 2302(a)(2)(C) (2006 ed.) (excluding from coverage, *inter alia,* the Federal Bureau of Investigation, the Central Intelligence Agency, and the Defense Intelligence Agency). Were we to find that the Equal Protection Clause subjects the Government to equal protection review for every allegedly arbitrary employment action, we will have undone Congress's (and the States') careful work.

In concluding that the class-of-one theory of equal protection has no application in the public employment context-and that is all we decide-we are guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick. supra,* at 143, 103 S.Ct. 1684. If, as Engquist suggests, plaintiffs need not claim discrimination on the basis of membership in

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action-not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments-on the theory that other employees were not treated wrongfully. See 478 F.3d, at 995. On Engquist's view, every one of these employment decisions by a government employer would become the basis for an equal protection complaint.

Engquist assures us that accepting her view would not pose too much of a practical problem. Specifically, Engquist argues that a plaintiff in a class-of-one employment*2157 case would have to prove that the government's differential treatment was intentional, that the plaintiff was treated differently from other similarly situated persons, and that the unequal treatment was not rationally related to a legitimate government purpose. Brief for Petitioner 36-39. And because a "governmental employment decision is ... rational whenever the discrimination relates to a legitimate government interest," it is in practice "difficult for plaintiffs to show that the government has failed to meet this standard." *Id.,* at 41. Justice STEVENS makes a similar argument, stating "that all but a handful [of class-of-one complaints] are dismissed well in advance of trial." *Post,* at 2161.

We agree that, even if we accepted Engquist's claim, it would be difficult for a plaintiff to show that an employment decision is arbitrary. But this submission is beside the point. The practical problem with allowing class-of-one claims to go forward in this context is not that it will be too easy for plaintiffs to prevail, but that governments will be forced to defend a multitude of such claims in the first place, and courts will be obliged to sort

through them in a search for the proverbial needle in a haystack. The Equal Protection Clause does not require "[t]his displacement of managerial discretion by judicial supervision." *Garcetti v. Ceballos,* 547 U.S. 410, 423, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

In short, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly "constitutionalize the employee grievance." *Connick,* 461 U.S., at 154, 103 S.Ct. 1684. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop, supra,* at 349, 96 S.Ct. 2074. Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

Justice STEVENS, with whom Justice SOUTER and Justice GINSBURG join, dissenting.
Congress has provided a judicial remedy for individuals whose federal constitutional rights are violated by state action, 42 U.S.C. § 1983.[FN1] In prior cases, we have refused to craft *new* remedies for the violation of constitutional rights of federal employees, *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), or for the nonconstitutional claims of state employees, *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). But refusal to give effect to the congressionally mandated remedy embodied in § 1983 would be impermissible. To avoid this result, the Court today concludes that Engquist suffered no constitutional violation at all, and that there was thus no harm to be remedied. In so holding, the Court-as it did in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)-carves a novel exception out of state employees' constitutional rights. In *Garcetti,* the Court created a new substantive rule excepting a category of speech by *2158 state em-

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

ployees from the protection of the First Amendment. Today, the Court creates a new substantive rule excepting state employees from the Fourteenth Amendment's protection against unequal and irrational treatment at the hands of the State. Even if some surgery were truly necessary to prevent governments from being forced to defend a multitude of equal protection "class of one" claims, the Court should use a scalpel rather than a meat-axe.

> FN1. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

### I

Our decision in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)*(per curiam),* applied a rule that had been an accepted part of our equal protection jurisprudence for decades: Unless state action that intentionally singles out an individual, or a class of individuals, for adverse treatment is supported by some rational justification, it violates the Fourteenth Amendment's command that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

Our opinion in *Olech* emphasized that the legal issue would have been the same whether the class consisted of one or five members, because "the number of individuals in a class is immaterial for equal protection analysis." *Id.,* at 564, 120 S.Ct. 1073, n. The outcome of that case was not determined by the size of the disadvantaged class, and the majority does not-indeed cannot-dispute the settled principle that the Equal Protection Clause protects

persons, not groups. See *ante,* at 2150 - 2151.

Nor did the outcome in *Olech* turn on the fact that the Village was discriminating against a property owner rather than an employee. The majority does not dispute that the strictures of the Equal Protection Clause apply to the States in their role as employers as well as regulators. See *ante,* at 2151. And indeed, we have made clear that "the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections." *Collins v. Harker Heights,* 503 U.S. 115, 119-120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

Rather, the outcome of *Olech* was dictated solely by the absence of a rational basis for the discrimination. As we explained:

> "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In so doing, we have explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'

> "[Olech's] complaint also alleged that the Village's demand was 'irrational and wholly arbitrary' .... These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis." 528 U.S., at 564, 565, 120 S.Ct. 1073 (some internal quotation marks and citations omitted).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
(Cite as: 128 S.Ct. 2146)

Here, as in *Olech,* Engquist alleged that the State's actions were arbitrary and irrational. In response, the State offered no explanation whatsoever for its decisions; it did not claim that Engquist was a sub-par worker, or even that her personality made **\*2159** her a poor fit in the workplace or that her colleagues simply did not enjoy working with her. In fact, the State explicitly *disclaimed* the existence of any workplace or performance-based rationale.FN2 See, *e.g.,* Reply Brief for Petitioner 17, 19. The jury proceeded to find that the respondents intentionally treated Engquist "differently than others similarly situated with respect to the ... termination of her employment ... without any rational basis and solely for arbitrary, vindictive or malicious reasons." App. to Pet. for Cert. 3-4. The jury's verdict thus established that there was no rational basis for either treating Engquist differently from other employees or for the termination of her employment. The State does not dispute this finding. Under our reasoning in *Olech,* the absence of any justification for the discrimination sufficed to establish the constitutional violation.

> FN2. But for this disclaimer, the lower court could have dismissed the claim if it discerned "any reasonably conceivable state of facts that could provide a rational basis for the [State's actions]," even one not put forth by the State. *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The disclaimer, however, negated that possibility.

The majority nonetheless concludes, based on "unique considerations applicable when the government acts as employer," that the "class of one" theory of equal protection is not applicable in the public employment context. *Ante,* at 2151. Its conclusion is based upon speculation about inapt hypothetical cases, and an incorrect evaluation of the importance of the government's interest in preserving a regime of "at will" employment. Its reasoning is flawed on both counts.

II

The majority asserts that public-employment decisions should be carved out of our equal protection jurisprudence because employment decisions (as opposed to, for example, zoning decisions) are inherently discretionary. I agree that employers must be free to exercise discretionary authority. But there is a clear distinction between an exercise of discretion and an arbitrary decision. A discretionary decision represents a choice of one among two or more rational alternatives. See 1 H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 162 (Tent. ed.1958) (defining discretion as "the power to choose between two or more courses of action each of which is thought of as permissible"). The choice may be mistaken or unwise without being irrational. If the arguments favoring each alternative are closely balanced, the need to make a choice may justify using a coin toss as a tie breaker. Moreover, the Equal Protection Clause proscribes arbitrary decisions-decisions unsupported by any rational basis-not unwise ones. Accordingly, a discretionary decision with any "reasonably conceivable" rational justification will not support an equal protection claim; only a truly arbitrary one will. There is therefore no need to create an exception for the public-employment context in order to prevent these discretionary decisions from giving rise equal protection claims.

The hypothetical situations posited by the majority do not prove otherwise. The hypothetical traffic officer described in the Court's opinion, *ante,* at 2154, had a rational basis for giving a ticket to *every* speeder passing him on the highway. His inability to arrest every driver in sight provides an adequate justification for making a random choice from a group of equally guilty and equally accessible violators. As such, the Court is quite correct in stating that "allowing an equal protection claim on the **\*2160** ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discre-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302

**(Cite as: 128 S.Ct. 2146)**

tion inherent in the challenged action." *Ibid.* If there were no justification for the arrest, there would be no need to invoke the Equal Protection Clause because the officer's conduct would violate the Fourth Amendment. But as noted, a random choice among rational alternatives does not violate the Equal Protection Clause.

A comparable hypothetical decision in the employment context (*e.g.,* a supervisor who is required to eliminate one position due to an involuntary reduction-in-force and who chooses to terminate one of several equally culpable employees) also differs from the instant case insofar as it assumes the existence of a rational basis for the individual decision. The fact that a supervisor might not be able to explain why he terminated one employee rather than another will not give rise to an equal protection claim so long as there was a rational basis for the termination itself and for the decision to terminate just one, rather than all, of the culpable employees.

Instead of using a scalpel to confine so-called "class of one" claims to cases involving a complete absence of any conceivable rational basis for the adverse action and the differential treatment of the plaintiff, the Court adopts an unnecessarily broad rule that tolerates arbitrary and irrational decisions in the employment context.

### III

The majority's decision also rests on the premise that "[t]he Constitution does not require repudiating th[e] familiar doctrine" of at-will employment. *Ante,* at 2156. In the 1890's that doctrine applied broadly to government employment, see *McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 29 N.E. 517 (1892), but for many years now " 'the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.' " *Keyishian v. Board of Regents of Univ. of State of N. Y.,* 385 U.S. 589, 605-606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Indeed, recent constitution-

al decisions and statutory enactments have all but nullified the significance of the doctrine. See, *e.g.,Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); see also 5 U.S.C. § 2302(b)(10) (2006 ed.) (supervisor of covered federal employee may not "discriminate ... on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others"). Accordingly, preserving the remnants of "at-will" employment provides a feeble justification for creating a broad exception to a well-established category of constitutional protections.[FN3]

> FN3. Moreover, equal protection scrutiny is not incompatible with at-will employment since courts applying rational-basis scrutiny are able to rely on any *conceivable* reason for government action, and the government therefore need not explain its actual reason for terminating or disciplining the employee.

### IV

Presumably the concern that actually motivates today's decision is fear that governments will be forced to defend against a multitude of "class of one" claims unless the Court wields its meat-axe forthwith. Experience demonstrates, however, that these claims are brought infrequently,[FN4] **\*2161** that the vast majority of such claims are asserted in complaints advancing other claims as well, and that all but a handful are dismissed well in advance of trial. Experience also demonstrates that there are in fact rare cases in which a petty tyrant has misused governmental power. Proof that such misuse was arbitrary because unsupported by any conceivable rational basis should suffice to establish a violation of the Equal Protection Clause without requiring its victim also to prove that the tyrant was motivated by a particular variety of class-based animus. When the allegations of a complaint plainly identify "the proverbial needle in a haystack," *ante,* at 2157, a federal court should not misconstrue the Constitu-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302
**(Cite as: 128 S.Ct. 2146)**

tion in order to make it even easier to dismiss un-meritorious claims.

> FN4. Prior to the Ninth Circuit's decision this case, "class of one" claims arising in the public-employment context were permitted by every court that was presented with one. Yet there have been only approximately 150 cases-both in the district courts and the courts of appeals-addressing such claims since *Olech.*

* * *

In sum, there is no compelling reason to carve arbitrary public-employment decisions out of the well-established category of equal protection violations when the familiar rational review standard can sufficiently limit these claims to only wholly unjustified employment actions. Accordingly, I respectfully dissent.

U.S.,2008.
Engquist v. Oregon Dept. of Agr.
128 S.Ct. 2146, 91 Empl. Prac. Dec. P 43,213, 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922, 2008 Daily Journal D.A.R. 8347, 21 Fla. L. Weekly Fed. S 302

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.